IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:25-cv-00858 |
| | ) | |
| v. | ) | |
| | ) | |
| MAXUMUS TAX, LLC, and | ) | |
| JAMES CARROLL, III, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

The United States brings this civil action under 26 U.S.C. § 7402(a), § 7407, and § 7408 of the Internal Revenue Code to permanently enjoin Defendants Maxumus Tax, LLC ("Maxumus"), James Carroll, III ("Carroll"), and anyone else in active concert or participation with them, from acting as a federal tax return preparers and from engaging in related activities. The United States alleges as follows:

### Jurisdiction and Venue

1.      Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402, 7407, and 7408.

2.      Venue is proper in this Court pursuant to 26 U.S.C. §§ 7407(a) and 7408(a), and 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the United States' claims occurred in this district.

### Authorization

3.      This action is authorized and requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States, pursuant to 26

1

U.S.C. §§ 7402, 7407, and 7408, and is commenced at the direction of a delegate of the Attorney General of the United States.

**Defendants' Tax Return Preparation Activities**

4.    Defendant Maxumus was incorporated in Texas as a domestic limited liability company in 2020.  It has operated a tax return preparation location in Fort Worth, Texas since that time and during the events giving rise to the United States' claims.

5.    Defendant Carroll resides in Katy, Texas.  Carroll owns and operates Maxumus. He has been a tax return preparer since at least 2017.  He personally prepares tax returns and, through Maxumus, employs others who prepare tax returns.

6.    Section 7701(a)(36) of Title 26 of the U.S. Code defines a "tax return preparer" as a person who prepares for compensation or "who employs one or more persons" to prepare tax returns for compensation.  Maxumus and Carroll are "tax return preparers" under 26 U.S.C. § 7701(a)(26).

7.    Between 2021 and 2024, Defendants prepared more than 7,000 federal income tax returns for their customers – 99% of which claimed a tax refund, with total refunds claimed exceeding $50 million.  More than 65% of these federal income tax returns identify Carroll as the tax return preparer.

8.    Defendants prepare tax returns for customers who either go to Maxumus' store location or who submit electronic documentation to Defendants using an online portal operated by Defendants' tax return preparation business.  Defendants use documents submitted by their customers through the online portal to prepare tax returns.  Defendants have prepared tax returns for customers using the online portal method without conducting interviews of those customers to verify information reported on the tax returns they prepare.

9.      Since at least 2021, Defendants have prepared false or fraudulent tax returns that understated customers' federal income tax liabilities and/or claimed fraudulent tax refunds, including by:

    a.      Claiming bogus tax credits under the Families First Coronavirus Response Act, as amended by the COVID-related Tax Relief Act of 2020 ("FFCRA");

    b.      Fabricating or inflating business losses on Schedule C ("Profit or Loss from Business") to reduce reported customer income and/or falsely claim the Earned Income Tax Credit ("EITC"); and

    c.      Claiming improper head-of-household filing status.

10.      Customers often have no knowledge that Defendants have prepared and filed false or fraudulent tax returns on their behalf.

11.      The goal of Defendants' tax-fraud scheme is to obtain false tax refunds for their customers – refunds that their customers were not entitled to receive or refunds in excess of the amounts their customers were entitled to receive – enabling them to charge fees, including fees Defendants received directly from the refunds.

**Defendants' Scheme to Claim Bogus Credits under the FFCRA**

12.      The FFCRA was intended to help the United States combat the economic impact of the COVID-19 Pandemic by providing small and midsize employers refundable tax credits that reimburse them, dollar-for-dollar, the cost of providing paid sick and family leave wages to their employees for leave related to COVID-19.  The FFCRA extended to self-employed individuals equivalent refundable tax credits ("Form 7202 credits").  Because this is a refundable credit, it can be used to generate a refund larger than the amount of tax paid, in other words, if the credit exceeds the tax, a taxpayer may get a refund of the difference.

13.     Eligible self-employed individuals were first able to claim this tax credit on their federal income tax returns filed for tax year 2020 subject to certain conditions.  To claim the credit, taxpayers or their tax return preparers completed a Form 7202 ("Credits for Sick Leave and Family Leave for Certain Self-Employed Individuals").  The Form 7202 credits are based upon net earnings from self-employment.  The Form 7202 credit amount is equivalent to the amount of paid sick or family leave a taxpayer would have received if the taxpayer had been an employee, rather than self-employed.

14.     To calculate the Form 7202 credits, the taxpayer's net earnings from self-employment is entered on the Form 7202.  In most cases, this is the amount from line 6 of the taxpayer's Schedule SE, which is attached to the taxpayer's federal income tax return. Importantly, if a taxpayer did not report net earnings from self-employment on the tax return from which the credit is claimed or the prior year's tax return, the taxpayer is not entitled to claim Form 7202 credits.  Or, if the taxpayer did report net earnings from self-employment on the tax return from which the credit is claimed or the prior year's tax return, the taxpayer is not entitled to claim Form 7202 credits that exceed those amounts reported on Schedule SE.

15.     For the 2020 tax year, Defendants prepared approximately 300 federal income tax returns that inflated claims for Form 7202 credits by concocting more than $6.1 million of net earnings on the Forms 7202 that are unreported on customers' corresponding Schedule SE.  As a result, Defendants claimed more than $1.8 million of false Form 7202 credits for the 2020 tax year on behalf of their customers.

16.     For the 2021 tax year, Defendants prepared more than 670 federal income tax returns that inflated claims for Form 7202 credits by concocting more than $12 million of net earnings on the Form 7202 that are unreported on customers' corresponding Schedule SE.  As a

result, Defendants claimed more than $3.5 million of false Form 7202 credits for the 2021 tax year on behalf of their customers.

17.    For example, the following customers' 2021 tax returns, signed by Carroll, claim the following:

a.    Customer 1's 2021 tax return, prepared by Carroll on March 28, 2022, claimed $26,710 in Form 7202 credits. Customer 1's tax return only reported $35,527 as self-employment income on Schedule SE but reported more than twice that amount of self-employment income on Customer 1's Form 7202 (*i.e.*, $73,997). As a result, Carroll improperly inflated Customer 1's claim for Form 7202 credits by at least $13,850.

b.    Customer 2's 2021 tax return, prepared by Carroll on March 31, 2022, claimed improper Form 7202 credits. Carroll inflated Customer 2's self-employment income of $28,195 as reported on Schedule SE by an additional $30,531 on Customer 2's Form 7202, which falsely increased Customer 2's claim for Form 7202 credits by at least $10,200.

c.    Customer 3's 2021 tax return, prepared by Carroll on May 20, 2022, claimed $15,300 in Form 7202 credits. Customer 3's tax return reported $41,244 as self-employment income on Schedule SE but reported $85,904 as self-employment income on Customer 3's Form 7202. As a result, Carroll improperly inflated Customer 3's claim for Form 7202 credits by at least $7,290.

**Preparation of False Forms Schedule C**

18.     Individuals who do business as sole proprietorships report their income and expenses on Schedule C of Form 1040 federal income tax returns.  Individuals who earn income from employment typically receive IRS Forms W-2 reporting wages, which employers provide to both their employees and file with the IRS.

19.     Typically, Defendants' customers receive wage income that is also reported to the IRS on Forms W-2 by employers.

20.     In 2024, 18% of federal income tax returns filed with the IRS included a Schedule C.  In contrast, more than 80% of the tax returns prepared at Defendants' tax preparation business that year included a Schedule C.

21.     Defendants prepare tax returns that report massive Schedule C losses, which, in turn, reduce the reported taxable income customers receive based on wages reported on Forms W-2.  From 2021 to 2024, Defendants prepared Schedules C's that reported more than $40 million in losses on approximately 2,500 customer tax returns, which, in turn, reduced reported taxable income of Defendants' customers as follows:

| Year | Reported Schedule C Losses | Avg. Reported Schedule C Loss per Customer | Percent Reduction in Reported Income |
|------|---------------------------|--------------------------------------------|--------------------------------------|
| 2024 | $16.7 million | $18,052 | 41% |
| 2023 | $13.3 million | $18,530 | 41% |
| 2022 | $8.7 million | $19,910 | 44% |
| 2021 | $7.1 million | $16,525 | 41% |

22.     Defendants invent businesses which never existed for their customers for which they report substantial expenses on Schedule C with little or no income.  Alternatively, Defendants inflate expenses from businesses to concoct bogus losses for their customers.  The

resulting net phony business loss offsets the customers' reported wages and reduces the customers' reported taxable income. As a result, Defendants fraudulently reduce their customers' reported income tax liability and, in most cases, simultaneously increase the amount of their customers' refund claim. Examples include:

a. <u>Customer 4</u>'s tax return for 2023, signed by an employee of Maxumus as preparer on February 2, 2024, includes a Schedule C that reports a fictitious "barber" business with $10,066 in losses. The Schedule C includes bogus claims that <u>Customer 4</u> received $2,015 in gross receipts or sales, but incurred $2,561 in repairs and maintenance, $5,233 for supplies, and $4,287 from rent of vehicles, machinery, or equipment. The tax return also falsely reports that the return preparer used a summary of expenses provided by <u>Customer 4</u> to report these items. But during 2023, <u>Customer 4</u> was employed by a nursing home and had no business and, therefore, incurred none of the losses claimed on his Schedule C. He provided Defendants with no documentation showing expenses from a "barber" business nor did he tell Defendants he had any such business. The reduced taxable income fraudulently inflated <u>Customer 4</u>'s claim on his 2023 tax return for the EITC. Moreover, <u>Customer 4</u> submitted documents to Maxumus using the online portal to have his 2023 tax return prepared and did not speak to anyone from Maxumus before Defendants prepared and filed <u>Customer 4</u>'s 2023 tax return. Nonetheless, the preparer at Maxumus concocted answers on a Form 8867 ("Paid Preparer's Due Diligence Checklist") and submitted that form to the IRS. The Form 8867

falsely reports that the preparer conducted an interview of <u>Customer 4</u> to verify information necessary to claim the EITC.

b.    <u>Customer 5</u> was married to <u>Customer 4</u> during 2023.  <u>Customer 5</u>'s 2023 tax return, signed by the same Maxumus employee who signed <u>Customer 4</u>'s tax return, reports a fake "hairstylist" business on Schedule C.  That business claims <u>Customer 5</u> earned $2,135 in gross receipts or sales and incurred the following expenses: $5,015 in repairs and maintenance; $4,863 for supplies; and $5,437 from rent of vehicles, machinery, or equipment.  During 2023, <u>Customer 5</u> was employed by Home Depot as a W-2 wage employee and had no business and, therefore, incurred none of the losses claimed on her Schedule C.  She provided Defendants with no documentation showing expenses from a business and did not tell Defendants she had any such business.  Indeed, <u>Customer 5</u> submitted documentation through Defendants' online portal to have her tax return prepared and never talked to anyone at Maxumus prior to the filing of her 2023 tax return.  Like her husband's tax return, <u>Customer 5</u>'s fraudulent tax return reduced her reported taxable income, inflated her claim for the EITC, and included a fraudulent Form 8867 submitted to the IRS that falsely asserts that the preparer conducted an interview of <u>Customer 5</u> to verify information necessary to claim the EITC.

c.    <u>Customer 6</u> had her 2021 tax return prepared by Carroll on February 28, 2022 and her 2022 tax return prepared by Carroll on March 6, 2023.  Although <u>Customer 6</u> had a business working as a photographer during both years and gave Carroll paperwork showing her expenses from the business, Carroll

greatly inflated those expenses on Schedule C without <u>Customer 6</u>'s

knowledge to falsely report losses of $44,212 for 2021 and $36,614 for 2022.

Those bogus losses offset <u>Customer 6</u>'s reported income from W-2 wage

employment with the U.S. Postal Service, falsely understated <u>Customer 6</u>'s

federal income tax liability, and resulted in a fraudulent claim for the EITC of

$2,483 for 2021 and $521 for 2022.

d.      <u>Customer 7</u>'s tax return for 2022, signed by Carroll on February 11, 2023,

claims a fictitious "janitorial" business with $20,897 in losses on Schedule C.

Customer 7 did not have a business in 2022 and did not tell his preparer that

he did.  The Schedule C reports only $2,157 of gross receipts or sales, with

expenses including: (a) $8,369 for vehicles, machinery, and equipment rentals

or leases; (b) $5,051 for repairs and maintenance; (c) $7,685 for taxes and

licenses; and (d) $1,949 for other expenses identified as "misc."  These bogus

losses offset <u>Customer 7</u>'s reported W-2 wage income and resulted in a

fraudulent claim for the EITC of $2,895.

e.      <u>Customer 8</u> had his 2022 tax return prepared by Carroll on February 11, 2023.

The Schedule C attached to the return reports the existence of a "dog breeder"

business with $2,519 of gross receipts or sales, as well as $42,234 of

expenses, including  $9,895 for vehicles, machinery and equipment rent or

leases, $7,351 for repairs and maintenance, $8,663 for supplies, and $16,325

as other expenses.  Carroll concocted all the information reported on the

Schedule C because <u>Customer 8</u> had no business and didn't tell Defendants

that he had a business.  This fictitious Schedule C loss offset reported taxable

income from W-2 wages and retirement distributions, which contributed to a
fraudulent refund claim of $6,115 on Customer 8's 2022 tax return.

f.    Customer 9's tax return for 2022, signed by Carroll on January 14, 2023,
reports a "daycare" business with $31,752 in losses on Schedule C. The
Schedule C reports $4,971 of gross receipts or sales. It also claims Customer
9 incurred expenses for $3,877 in office expenses, $3,891 for vehicles,
machinery and equipment rentals or leases, $2,571 for repairs and
maintenance, $7,143 for supplies, and $19,241 as other expenses, including
$8,993 identified as "misc." Customer 9 did not have any business in 2022,
did not inform Carroll that she had a business, and did not consent to reporting
a Schedule C business on her 2022 tax return, despite the inclusion of a Form
8867 with the tax return representing to the IRS that Carroll interviewed
Customer 9 to make these claims. These bogus losses offset Customer 9's
reported W-2 wage income and resulted in a fraudulent claim for the EITC of
$2,496.

g.    Customer 10 resided in Long Beach, California during 2022, has never lived
in Texas, and did not retain Defendants to prepare his 2022 tax return.
Customer 10 attempted to file his 2022 tax return in April 2023 but learned
that his identity had been stolen to prepare and file a 2022 tax return without
his authorization on February 20, 2023. That February 2023 tax return, using
Customer 10's stolen identity, is signed by Carroll and claims a fraudulent
refund of $9,500. Bogus items on the February 2023 tax return include: (a) a
fraudulent EITC claim of $2,783; (b) a false dependent; (c) $21,637 in losses

from a non-existent Schedule C business identified as "driver"; and (d) a fraudulent Form 8867 that falsely asserts that Carroll conducted an interview of <u>Customer 10</u> to verify information necessary to claim the EITC, as well as tax credits based on the bogus dependent.

**False Claims for Head-of-Household Status**

23.     For taxpayers who qualify, Head of Household filing status provides advantages over Single (or Married Filing Separately) filing status, such as a larger standard deduction and a larger claim for the EITC.  But married taxpayers who choose to file separately are ineligible to claim Head of Household status.  By improperly selecting Head of Household status, Defendants obtained benefits for their customers who were ineligible for them.  Examples include:

a.     <u>Customer 4</u> and <u>Customer 5</u>, described above, were married throughout 2023. Both customers' 2023 tax returns, prepared by the same Maxumus employee in 2024, falsely claim Head of Household status, list identical home addresses, and inflate claims for the EITC.  <u>Customer 4</u> and <u>Customer 5</u>'s 2023 tax returns also falsely report that the preparer asked questions to verify claims for Head of Household status when, in fact, the preparer conducted no such interviews.

b.     <u>Customer 9</u>'s 2022 tax return, signed by Carroll, falsely claims Head of Household status.  <u>Customer 9</u> married her spouse in 2020 and remained married throughout 2022.  <u>Customer 9</u>'s spouse, <u>Customer 11</u>, also had his 2022 tax return prepared by Carroll, lists the same street address as Customer 9, and falsely claims Head of Household status.

24.     On Carroll's personal federal income tax returns for 2020 and 2021, he falsely claims Head of Household status, despite the fact that he was married during each of these years and living with his wife.  Carroll also prepared his wife's 2020 tax return on February 22, 2021, and her 2021 tax return on January 19, 2022.  Both tax returns Carroll prepared for his wife claim improper Head of Household status.  Combined, all four tax returns claim more than $25,000 in improper EITC.

## Harm Caused by Defendants

25.     The false returns that Defendants' tax preparation business prepare and file have caused – and continue to cause – substantial harm to the public and the United States Treasury by falsely reducing their customers' reported tax liabilities, helping customers avoid paying their fair share of tax, and producing refunds to which customers are not entitled.  Defendants' improper claims for Form 7202 credits alone exceed $5 million.

26.     Defendants' preparation of fraudulent tax returns has harmed the United States Treasury because their customers did not pay taxes they lawfully owed or received tax refunds they were not entitled to receive.

27.     Defendants have harmed their customers by illegally causing them to incorrectly report their federal tax liabilities and underpay their taxes.  These customers are liable for taxes owed and may be liable for sizeable penalties and interest.

28.     Defendants further have harmed the United States and the public by requiring the IRS to devote limited resources to detecting their misconduct and to assessing, collecting, or recovering taxes or erroneous tax refunds from Defendants' customers.  The IRS will not be able to collect all tax liabilities owed or recover all erroneously issued refunds.

29.     In addition to the direct harm Defendants cause by preparing tax returns that understate customers' tax liabilities, Defendants' misconduct undermines the public's confidence in the internal revenue laws, which are predicated on honest and accurate self-reporting by taxpayers and the preparers they hire to prepare their tax returns.

30.     Defendants unlawful conduct also harms honest tax return preparers because, by preparing tax returns that inflate their customers' refunds (albeit, unlawfully), Defendants gain an unfair competitive advantage over tax return preparers who prepare tax returns in accordance with the law.

31.     The harm to the Government and the public will increase if Defendants are not enjoined because – given the seriousness and pervasiveness of their improper conduct – without an injunction, they are likely to continue preparing false and fraudulent tax returns.  In sum, an injunction will serve the public interest because it will put a stop to Defendants' misconduct and the harm such conduct causes the United States and its citizens.

## COUNT I
## Injunction under 26 U.S.C. § 7407

32.     The United States incorporates by reference the allegations in paragraphs 1 though 31.

33.     Section 7407 of the Internal Revenue Code (26 U.S.C.) authorizes a district court to enjoin a tax return preparer from, among other things, engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695, or engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws, if the court finds that the preparer has engaged in such conduct and that injunctive relief is appropriate to prevent the recurrence of such conduct.

34.     Additionally, Section 7407 provides that if the court finds that a tax return preparer has continually or repeatedly engaged in such conduct, and that an injunction prohibiting only such conduct would not be sufficient to prevent that person's interference with the proper administration of the Internal Revenue Code, then the court may enjoin the person from further acting as a tax return preparer.

35.     Section 6694 of the Internal Revenue Code imposes a penalty on any tax return preparer who prepares any return or claim for refund with respect to which any part of an understatement of liability is due to: (a) an unreasonable position of which the preparer knows or reasonably should have known; (b) a willful attempt to understate the liability; or (c) a reckless disregard of rules or regulations.  Section 6694(e) defines understatement of liability to include "any understatement of the net amount payable with respect to any tax imposed by this title or any overstatement of the net amount creditable or refundable with respect to any such tax."

36.     Defendants continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694 by preparing federal income tax returns that understate their customers' liabilities or claim tax credits to which their customers were not entitled based on a willful attempt to generate bogus refunds; unreasonable, unrealistic, and frivolous positions of which they knew or should have known; or their reckless disregard of the rules or regulations.  For example, Defendants knew or should have known: (a) by simply looking at the returns they prepared, that customers for whom they falsely claimed Form 7202 credits did not have the net earnings from self-employment that are claimed on the Forms 7202; (b) they were claiming non-existent Schedule C losses to offset reported taxable income; and (c) they were claiming Head of Household status to individuals who did not qualify for that filing status.

37.     The Treasury Regulations promulgated under § 6695(g) prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting that compliance with the due diligence requirements.  Defendants continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6695, including, but not limited to their failure to conduct proper due diligence and documenting that compliance.

38.     Defendants violated § 6695 and related Treasury Regulations by failing to comply with due diligence requirements for the EITC, and their willingness to falsify information to obtain the EITC for their customers shows reckless or intentional disregard for IRS rules and regulations.  Defendants ignored, disregarded, or failed to adequately verify information provided by customers.  Defendants have not conducted required due diligence procedures.  To conceal their failures, Defendants falsified their due diligence questionnaire responses.

39.     Under 26 U.S.C. § 7407(b)(1)(A), Defendants' continual and repeated violations of 26 U.S.C. §§ 6694 and 6695 are subject to an injunction.

40.     If the Court does not enjoin Defendants, they are likely to continue engaging in conduct subject to penalty under Sections 6694 and 6695, as well as engaging in other fraudulent or deceptive conduct that substantially interferes with the tax law administration.  Defendants have been preparing tax returns that understate their customers' tax liabilities and claim credits to which customers are not entitled for years using the various schemes described above.  The Defendants' preparation of tax returns claiming false or fraudulent claims on behalf of their customers is widespread and flagrantly illegal.

41.     Injunctive relief is therefore appropriate under Section 7407, and the Court should permanently enjoin Defendants from acting as tax return preparers.

## COUNT II
## Injunction under 26 U.S.C. § 7408

42.     The United States incorporates by reference the allegations in paragraphs 1 through 31.

43.     Section 7408 of the Internal Revenue Code (26 U.S.C.) authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 (among other provisions) if injunctive relief is appropriate to prevent the recurrence of such conduct.

44.     Section 6701 penalizes any person (1) who aids or assists in, procures, or advises with respect to the preparation of any portion of a federal tax return, refund claim, or other document, (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and (3) knows that, if it is so used, it will result in an understatement of another person's tax liability.

45.     The Defendants prepare federal tax returns for their customers that they know will be filed with the IRS and that they know will understate their customers' tax liabilities or generate bogus refunds because they knowingly prepare returns that claim false or inflated deductions and credits.  Defendants conduct is thus subject to penalty under Section 6701.

46.     If the Court does not enjoin the Defendants, they are likely to continue to engage in conduct subject to penalty under Section 6701.  The Defendants' preparation of returns claiming improper deductions and credits is widespread.  Injunctive relief is therefore appropriate under Section 7408.

## COUNT III
## Injunction under I.R.C. § 7402(a)

47.    The United States incorporates by reference the allegations in paragraphs 1 through 31.

48.    Under 26 U.S.C. § 7402(a), a court may issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws, even if the United States has other remedies available for enforcing those laws.

49.    Defendants engaged in conduct that substantially interferes with the enforcement of the internal revenue laws, including by intentionally understating customers' tax liabilities, claiming fraudulent tax refunds, and filing false federal tax returns on behalf of customers.

50.    Defendants have shown that they should not be allowed to continue to prepare tax returns for others because they have actively subverted the American tax system, which relies on taxpayers to accurately self-report their income, claimed deductions, and other items. Defendants deliberately played the audit lottery on behalf of their customers, and the IRS lacks the resources to audit every tax return Defendants have prepared and will prepare in the future absent injunctive relief.

51.    Unless enjoined, Defendants are likely to continue engaging in improper conduct, including filing false or fraudulent tax returns on behalf of taxpayers.  If not enjoined, Defendants will inflict irreparable injury upon the United States because the Government will wrongfully provide federal income tax refunds to individuals not entitled to receive them, will collect less than the correct amount of tax from individuals who owe taxes to the United States, and will be unable to fully recoup the resulting losses to the U.S. Treasury.

52.    Enjoining Defendants is in the public interest because an injunction, backed by the Court's contempt powers if needed, will stop Defendants' illegal conduct and the harm it

causes the United States and Defendants' customers.  Furthermore, an injunction barring Defendants from continuing their illicit schemes is not even a harm, but even if it were, any harm that results to their business from having to close is substantially outweighed by the harm they cause to the United States and to the public.

53.    An injunction under 26 U.S.C. § 7402 is therefore necessary and appropriate.

**WHEREFORE**, the United States of America prays for the following:

A.    That the Court find that Defendants have continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, and in other fraudulent or deceptive conduct that substantially interferes with the proper administration of the tax laws; that, pursuant to 26 U.S.C. § 7407, an injunction merely prohibiting conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695, or other fraudulent or deceptive conduct, would be insufficient to prevent their interference with the proper administration of the tax laws; and that Defendants should be permanently enjoined from acting as tax return preparers;

B.    That the Court find that Defendants have repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6701; that, pursuant to 26 U.S.C. § 7408, injunctive relief to prevent the recurrence of such conduct is appropriate;

C.    That the Court find that Defendants have interfered with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to 26 U.S.C. § 7402(a) and under the Court's inherent equity powers;

D.    That the Court, pursuant 26 U.S.C. §§ 7402(a), 7407, and 7408, enter a permanent injunction enjoining Defendants, and all those in active concert or participation with them, from directly or indirectly:

(1)    acting as federal tax return preparers;

(2) preparing, assisting in, or directing, the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

(3) advising, counseling, or instructing anyone regarding substantive tax law or the preparation of federal tax returns for compensation or promise of compensation;

(4) owning, operating, managing, working for, investing in, volunteering for, consulting for, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business;

(5) training, instructing, teaching, and creating or providing cheat sheets, memoranda, directions, instructions, or manuals, pertaining to the preparation of federal tax returns;

(6) maintaining, assigning, holding, using, leasing, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

(7) engaging in any other activity subject to penalty under 26 U.S.C. §§ 6694, 6695, 6700, or 6701;

(8) advertising tax return preparation services through any medium, including print, online, and social media;

(9) referring any taxpayer to a tax preparation firm or to a tax return preparer, or otherwise suggesting that a taxpayer use any given tax preparation firm or any tax return preparer;

19

(10)    selling, providing access, or otherwise transferring to any person or entity other

than the IRS or counsel for the United States a list of tax preparation customers

that Defendants generated by their tax return preparation activities or any

proprietary information pertaining to their tax return preparation business;

(11)    collecting or gathering Forms W-2, Forms 1099, or any other IRS form from

taxpayers or from customers who want to have a federal tax return prepared;

(12)    working in the same office or office suite that also contains any part of a business

whose activity at that office or office suite is to file, prepare, advise, assist in

the preparation of documents relating to a matter material to the internal revenue

laws, including federal tax returns, amended federal tax returns, and related

documents; and

(13)    providing office space, equipment, or services for, or in any other way facilitating,

the work of any person or entity that is in the business of preparing or filing

federal tax returns or other federal tax documents or forms for others or

representing persons before the Internal Revenue Service.

E.    That the Court, under 26 U.S.C. §§ 7402 and 7407, enter an order requiring

Defendants to immediately and permanently close all store locations where Defendants operate a

tax return preparation business directly or through any entity.

F.    That the Court, under 26 U.S.C. §§ 7402 and 7407, enter an order requiring

Defendants to immediately terminate the operation of any online portal they use to gather

documents from customers to prepare tax returns.

G.    That the Court enter an order requiring Defendants to send, at their own expense,

by mail within 30 days of the Court's order, and, if an email address is known also by email, a

copy of any order of permanent injunction entered by the Court in this action against Defendants, to: (1) all persons for whom they have prepared federal tax returns, amended tax returns, or claims for refund since January 2022; (2) all business partners, associates, landlords, employees or independent contractors that Defendants have engaged since January 2022 during the operation of their tax return preparation business; and (3) all tax preparation tax software providers from whom Defendants have purchased or licensed any tax preparation software since January 2022 to prepare tax returns for others.

H.     That the Court enter an order requiring Defendants from at least January 1 through April 16 of each year, for no less than five (5) years, to prominently and continuously post a copy of any order of permanent injunction entered by the Court in this action (with dimensions of at least 12 by 24 inches) at all the locations where Defendants conduct business.

I.     That the Court enter an order requiring Defendants, for 365 days following entry of an injunction order, to post on all social media accounts and websites used to advertise their tax preparation services: "The United States District Court for the Northern District of Texas has permanently enjoined and barred Maxumus and James Carroll, III from preparing federal income tax returns for anyone other than themselves. See the U.S. Department of Justice, Tax Division's website for further information." This statement will include a hyperlink, which will be provided by counsel for the United States, to any press release regarding the injunction that the Department of Justice may issue.

J.     That the Court enter an order requiring Defendants to produce to counsel for the United States, within 30 days of the Court's order: (1) a list that identifies by name, social security number, address, email address, telephone number, and tax period(s) all persons for whom Defendants prepared federal tax returns or claims for a refund for calendar years

beginning in 2022 up to and including the date of any injunction order entered by this Court; and (2) a list that identifies by name, address, and e-mail (if applicable) each person or entity that Defendants notified pursuant to Paragraph G, above.

K.    That the Court enter an order: (1) prohibiting Defendants from applying for, and from directing others to apply for on their behalf, an EFIN or a PTIN; and (2) requiring Defendants to surrender to the Secretary of the Treasury or his delegate all PTINs held by, assigned to, or used by them pursuant to 26 U.S.C. § 6109, as well as any EFINs held by, assigned to, or used by them.

L.    That the Court enter an order requiring Defendants, within 60 days of the Court's order, to file a declaration, signed under penalty of perjury, confirming that they received a copy of the Court's order and have timely complied with the terms described in paragraphs E, F, G, H, I, J, and K(2) above as of the date they signed the declaration.

M.    That this Court enter an order that permits the United States to conduct post-judgment discovery to ensure Defendants' compliance with the permanent injunction.

N.    That this Court grant the United States such other relief as the Court deems appropriate.

DATED:   August 11, 2025

*/s/  Russell J. Edelstein*
RUSSELL J. EDELSTEIN
(MA Bar No. 663227)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-2704
Facsimile: (202) 514-6770
russell.j.edelstein@usdoj.gov
*COUNSEL FOR UNITED STATES*

22